**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ARENA IP, LLC,

Plaintiff,

v.

NEW ENGLAND PATRIOTS, LLC,

Defendant.

Civil Action No. 4:23-cv-00428

**DEFENDANT NEW ENGLAND PATRIOTS' REPLY**
**IN SUPPORT OF THE MOTION TO DISMISS FOR**
**FAILURE TO STATE A CLAIM BASED ON 35 U.S.C. § 101**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................ 1

II. THIS CASE SHOULD BE DISMISSED ............................................................. 3

A. Arena IP Fails To Provide Separate Analysis For Each Claim..................... 3

B. The ’820 Patent Lacks Patent Eligible Subject Matter Under § 101 ............ 4

1. The claims provide no specific technological improvement. ............ 4

2. The claims lack an inventive concept ............................................... 7

3. Prior USPTO findings do not support patent eligibility. ................. 10

4. Limiting an abstract idea to a particular field, benefit, or technological environment does not make it patent eligible. .......... 11

C. There Is No Reason to Delay Dismissal With Prejudice ........................... 12

III. CONCLUSION ........................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex. v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016)....................5

*BASCOM Glob. Internet Servs. Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016)....................9

*British Telecomms. PLC v. IAC/InterActiveCorp*,
813 F. App'x 584 (Fed. Cir. 2020)....................3, 8

*BSG Tech LLC v. BuySeasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)....................9

*Chamberlain Grp, Inc. v. Techtronic Indus. Co.*,
935 F.3d 1341 (Fed. Cir. 2019)....................5

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019)....................6, 7, 11, 12

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014)....................12

*Diamond v. Diehr*,
450 U.S. 175 (1981)....................10

*EcoServices, LLC v. Certified Aviation Serv., LLC*,
830 F. App'x 634 (Fed. Cir. 2020)....................6

*Elec. Commc'n Techs. v. ShoppersChoice.com, LLC*,
958 F.3d 1178 (Fed. Cir. 2020)....................12

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)....................*passim*

*Fast 101 Pty Ltd. v. CitiGroup Inc.*,
834 F. App'x 591 (Fed. Cir. 2020)....................1

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
850 F.3d 1332 (Fed. Cir. 2017)....................5

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016)........................................................8, 10, 11

*In re Khan*,
722 F. App'x 1038 (Fed. Cir. 2018) ........................................................3

*In re Mohapatra*,
842 F. App'x 635 (Fed. Cir. 2021) ........................................................11

*In re Morsa*,
809 F. App'x 913 (Fed. Cir. 2020) ........................................................3

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)........................................................10

*Secured Mail Sols., LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017)........................................................13

*Sensormatic Elec., LLC v. Wyze Labs, Inc.*,
No. 2020-2320, 2021 WL 2944838 (Fed. Cir. July 14, 2021)..................................6

*Synopsys, Inc. v. Mentor Graphics Corp.*,
839 F.3d 1138 (Fed. Cir. 2016)........................................................2, 10

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020)........................................................8

*TLI Communs. LLC v. AV Auto., LLC*,
823 F.3d 607 (Fed. Cir. 2016)........................................................5, 9

*Two-Way Media Ltd. v. Comcast Cable Commc'ns., LLC*,
874 F.3d 1329 (Fed. Cir. 2017)........................................................6

*Yu, v. Apple Inc.*,
1 4th 1040, 1046 (Fed. Cir. 2021)........................................................13

**Statutes**

35 U.S.C. §§ 102 and 103........................................................10

## I. INTRODUCTION

Arena IP put little effort in its opposition, submitting a boilerplate brief using a generic template that Arena IP's counsel uses in almost every response to a motion to dismiss based on § 101. Notably, Arena IP's cut-and-paste arguments included cut-and-paste errors (referring to an unrelated patent and the wrong party[1]) and a complete disregard for the procedural posture in this case. Specifically, Arena IP ignored (or forgot) that it had already amended its complaint following the hearing this Court held on the Patriots' letter brief seeking permission to file the present motion.

Arena IP filed the Amended Complaint specifically to address any underlying factual allegations for the subject matter eligibility analysis. Dkt. 19. Now (blindly following its generic template), Arena IP's opposition requests another pleading opportunity, without "identif[ying] with specificity any additional factual allegations or claim constructions that would render amendment . . . not futile." *Fast 101 Pty Ltd. v. CitiGroup Inc.*, 834 F. App'x 591, 594 (Fed. Cir. 2020) (affirming dismissal with prejudice and denial of futile amendments where claims lacked eligible subject matter). Arena IP's request should be denied, and this case should be dismissed with prejudice.

Arena IP's superficial opposition cannot change the fact that the '820 patent is directed to patent ineligible subject matter. At *Alice* Step One, the claims are directed to the abstract idea of providing Wi-Fi access in public venues. Indeed, Arena IP's opposition

[1] The opposition mistakenly refers to the '262 patent. Opp. at 11. In another copy-and-paste mistake, Arena IP states that the claims are "not an 'abstract idea of searching a database in response to an error,' as Penney OpCo baselessly claims." *Id.* at 16.

concedes that the '820 patent is generally directed to "a communications network within a public venue supporting access to video and data by hand held devices also located within the public venue." Dkt. 23 ("Opp.") at 12. Despite this concession, Arena IP counters that the claims are directed to specific improvements to "older venues that lack [] 'built-in' wireless data communications infrastructure." Opp. at 11. But old buildings that lack Wi-Fi is not a technological problem, and providing known Wi-Fi technology in those old buildings is certainly not a technological solution. To the contrary, the claims of the '820 patent exemplify an abstract idea that fails to provide specific technological improvements.

At *Alice* Step Two, Arena IP does not, and cannot, dispute that the computing components (servers and access points) recited in claims of the '820 patent are generic and conventional, as is the provision of Wi-Fi in public venues and sports stadiums. In fact, apart from the abstract idea, Arena IP does not even attempt to identify an inventive concept in any limitations or claims. Instead, Arena IP merely states that "[t]he claims included an inventive concept," since the examiner considered novelty and obviousness. Opp. at 17. But it is well-established that subject-matter eligibility is a distinct and separate inquiry from novelty and obviousness. *See, e.g., Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("The search for a § 101 inventive concept is thus distinct from demonstrating § 102 novelty."). This argument thus fails.

At bottom, the conventional use of off-the-shelf Wi-Fi access points is not patent eligible, even if the field of the invention is restricted to "sports and entertainment venues." Therefore, the '820 patent lacks patent eligible subject matter, and the amended complaint should be dismissed.

## II. THIS CASE SHOULD BE DISMISSED

### A. Arena IP Fails To Provide Separate Analysis For Each Claim

The opposition states in conclusory fashion that claim 1 is not representative, and every other claim purportedly has "additional concrete and technical elements and steps requiring separate patentability analysis." Opp. at 8–9. Yet, other than pasting the claims in its brief, Arena IP fatally omits any separate patentability analysis for other patent claims, thereby waiving the argument that any claims or limitations beyond claim 1 are relevant to the analysis. *British Telecomms. PLC v. IAC/InterActiveCorp*, 813 F. App'x 584, 587–88 (Fed. Cir. 2020) (patentee "forfeited its ability to argue that other claims are separately patent eligible" by "not present[ing] any 'meaningful argument for the[ir] distinctive significance'"); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016) (treating claim 12 as representative where the patentee neglected to "present[] any meaningful argument for the distinctive significance of any claim limitations other than those included in claim 12"); *In re Khan*, 722 F. App'x 1038, 1040-41 (Fed. Cir. 2018) ("The Khans cannot rely on passing references to these dependent claims . . . ."); *In re Morsa*, 809 F. App'x 913, 915 n.3 (Fed. Cir. 2020) ("Where a party does not raise any arguments with respect to any other claim limitation, nor does it separately argue the dependent claim, the dependent claim stands or falls together with the independent claim.") (internal quotation marks and citations omitted). Critically, the opposition does not explain any "concrete and technical elements" purportedly requiring separate analysis, instead focusing the entirety of its argument on various aspects of claim 1.

Regardless, as the Patriots explained in detail, the other claims are not materially different for § 101 purposes because they recite the same basic limitations—a server and more than one "self-contained pod including wireless communications electronics and an integrated antennae . . . to operate as a wireless access point" to allow spectators to access data on the server—and add only peripheral elements. Mot. at 5-6. The specification acknowledges that these additional "concrete" elements in the dependent claims are merely conventional, including off-the-shelf wireless repeaters for extending Wi-Fi coverage in public venues, rechargeable batteries, and solar cells. *See* '820 patent at 3:38–42 ("Wireless repeaters . . . extend the range of an existing WLAN . . . [including] stand-alone 802.11 wireless repeaters on the market"), 8:27-28 ("rechargeable power source (i.e., rechargeable lithium batteries or the like)"), Abstract ("An optional solar cell can provide electrical power to charge the rechargeable power source."). "Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Elec. Power Grp.*, 830 F.3d at 1355. Thus, whether the Court elects to treat claim 1 as representative (and it should), the result is the same—all claims are ineligible.

## B. The '820 Patent Lacks Patent Eligible Subject Matter Under § 101

### 1. The claims provide no specific technological improvement.

At *Alice* Step One, Arena IP asserts that the '820 patent relates to "communications electronics that are provided within venues in the form of self-contained pods that enable enhanced video and data communications with multiple wireless hand held devices for any

public venues where data access is needed." Opp. at 15–16. "Stripped of excess verbiage," Arena IP's description concedes that the patents are directed to providing Wi-Fi access in public venues by using known wireless repeaters to extend network coverage. *Affinity Labs of Tex. v. DIRECTV, LLC*, 838 F.3d 1253, 1256 (Fed. Cir. 2016); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1339 (Fed. Cir. 2017). Just as "steps that generically spell out what it means to 'apply it on a telephone network' [] cannot confer patent eligibility," neither can the instruction of the '820 patent to "apply it [in a public venue]." *TLI Communs. LLC v. AV Auto., LLC*, 823 F.3d 607, 615 (Fed. Cir. 2016). Arena IP does not deny that "the recited physical components behave exactly as expected according to their ordinary use" to enable Wi-Fi access across a large area, such that the claims are directed to the abstract idea itself. *Id.*; *see also* '820 patent at 3:62–66 ("The placement of a repeater between the covered and uncovered areas, however, can provide connectivity throughout most of the venue space.").

The claims here are even more abstract than those the Federal Circuit has found invalid under § 101, including the claims directed at "wirelessly communicating regional broadcast content to an out-of-region recipient" in *Affinity Labs.* Mot. at 2-3, 10-12. But the opposition does not attempt to distinguish *Affinity Labs* or any of the cases cited in the Patriots' motion. *See, e.g.*, *Affinity Labs*, 838 F.3d at 1261 (wireless communication of broadcast content to out-of-region recipients is directed to an abstract idea despite the need for cellular telephones, a graphical user interface, and a broadcasting system); *Chamberlain Grp, Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1347 (Fed. Cir. 2019) (invalidating claims because "the broad concept of communicating information wirelessly, without

more, is an abstract idea"); *Elec. Power Grp.*, 830 F.3d at 1351 (invalidating "lengthy and numerous" claims directed to "monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results"); *Sensormatic Elec., LLC v. Wyze Labs, Inc.*, No. 2020-2320, 2021 WL 2944838, at *1 (Fed. Cir. July 14, 2021) (invalidating claims "directed to the abstract ideas of 'wireless communication and remote surveillance'"); *Two-Way Media Ltd. v. Comcast Cable Commc'ns., LLC*, 874 F.3d 1329, 1337–38 (Fed. Cir. 2017) ("The claim requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way.").

Arena IP instead argues that the '820 patent is similar to the patent in *Ecoservices*, which according to Defendant "described a system for automatically controlling a washing procedure." Opp. at 10. But it is in no way similar. There, the Federal Circuit emphasized that the claims did "not recite the mere desired result of automated jet engine washing," but rather a "specific system that improves jet engine washing." *EcoServices, LLC v. Certified Aviation Serv., LLC*, 830 F. App'x 634, 642 (Fed. Cir. 2020). Here, there is no "specific system that improves" Wi-Fi technology but only the conventional use of off-the-shelf wireless Wi-Fi repeaters in the context of public venues and sports stadiums. *See, e.g., ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 768 (Fed. Cir. 2019) ("[T]he specification never suggests that the charging station itself is improved from a technical perspective, or that it would operate differently than it otherwise could. Nor does the specification suggest that the invention involved overcoming some sort of technical difficulty in adding networking capability to the charging stations.").

Arena IP also counters that the claims do not merely provide Wi-Fi access in a public venue but a "unique combination and configuration of components." Opp. at 11. Nonsense. Arena IP states that the claims provide "a wireless data communications systems including communication nodes set up to establish a communication network" but that is simply the definition of a data communications network. *Id.* at 12. Similarly, there is nothing unique about "communication nodes . . . supporting access to video and data by hand held devices also located within the public venue." *Id.* The very fact that Arena IP asserted its patent against a wide range of defendants (including Extreme Networks, Verizon, AT&T, Aruba Networks, Cisco, Ericsson, Boingo Wireless, CommScope, and the Minnesota Vikings)[2] demonstrates that there is nothing unique or specific about the combination or the configuration—Arena IP asserts the patent against any stadium that includes Wi-Fi access points "thus preempting all use of that law or idea." *ChargePoint*, 920 F.3d at 769.

The claims are directed to the abstract idea providing Wi-Fi access in public venues. Arena IP's reformulation of the focus of the claims does not change that, and if anything, underscores it.

**2. The claims lack an inventive concept.**

At *Alice* Step Two, the claims of the '820 patent add nothing inventive to the abstract idea of providing Wi-Fi access to spectators in public venues, such as sports stadiums. The

[2] In a footnote, Arena IP states that only Extreme Networks filed a motion to dismiss on the same basis, implying that no other defendant endorses this motion. Opp. 1 at n.2. But Arena IP dismissed the other defendants, including Extreme Networks, so that no other court could invalidate this patent first.

claims do not provide a specific technological improvement, or any improvement of the wireless repeaters at the heart of the claims. Arena IP does not dispute that the "server," "video cameras," "wireless communications electronics," "integrated antenna," and "hand held wireless devices" of claim 1 are all generic, off-the-shelf devices. Arena IP appears to emphasize the "self-contained pod," but never explains any purported differences between "self-contained pods" and ordinary wireless repeaters, thereby waiving the argument. *See British Telecomms.*, 813 F. App'x at 587–88 (patentee "forfeited its ability to argue that other claims are separately patent eligible" by "not present[ing] any 'meaningful argument for the[ir] distinctive significance'").

Regardless, the specification admits that the components of the Wi-Fi network are merely generic, off-the-shelf devices, being used in the conventional way.[3] *See, e.g.*, *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) ("The specification thus confirms that the implementation of the abstract idea is routine and conventional."). The '820 patent fails to "identify[] a 'specific' improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function" of Wi-Fi network coverage in a public venue. *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020). Thus, there is no inventive concept.

[3] *See, e.g.*, '820 patent at 3:38–42 (acknowledging the "stand-alone 802.11 wireless repeaters on the market," and that "some access points have a built-in repeater mode"); 4:53–58 ("The wireless communications network supported by the pods 100 enable handheld devices 210 to receive multiple perspective [sic] of an event 230 in video captured within the venue by cameras as shown in block 230, and as thoroughly taught in U.S. Pat. Nos. 7,149,549, 7,376,388 and 7,620,426."); *id.* at 5:4–6 ("A core hole plug assembly has been described in U.S. Pat. No. 6,662,490 . . . , can provide a carrier for the communications electronics 110.").

The ordered combination of generic network components in the ’820 patent merely reflects routine and conventional infrastructure where wireless repeaters are deployed to extend Wi-Fi coverage over a large area. Undisputedly, prior to any purported invention in the ’820 patent, “[w]ireless repeaters . . . [we]re an alternative way to extend the range of existing WLAN.” ’820 patent at 3:38–40. The ordered combination of wireless repeaters together with generic servers, antennae, and handheld devices does not diverge in any way from the conventional application of the same components within a Wi-Fi network. The opposition does not identify any unconventional steps in the deployment of wireless repeaters, and the specification acknowledges the use of off-the-shelf components in the normal way. *See supra* at n.3.

Quoting to *BASCOM*, Arena IP argues that “an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.” Opp. at 16. But Arena IP’s citation to *BASCOM* is unavailing. In *BASCOM*, the filtering system was unconventionally located on an ISP server, while still associating individual accounts with their own filtering scheme. *BASCOM Glob. Internet Servs. Inc., v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). In contrast, the wireless repeaters and other Wi-Fi network components in the ’820 patent are admittedly deployed in the ordinary and conventional manner for extending network coverage over a large area. *See Elec. Power Grp.*, 830 F.3d at 1355 (“[N]othing in the patent contains any suggestion that the displays needed for that purpose are anything but readily available.”). That is, the claims merely identify wireless repeaters as a network coverage solution, adding “apply it [in public venues].” *TLI Communs.*, 823 F.3d at 615; *see also, e.g.*, *BSG Tech LLC v. BuySeasons,*

*Inc.*, 899 F.3d 1281, 1284, 1287 (Fed. Cir. 2018) (finding patent ineligible a "self-evolving" database system for improved searching, because the "benefits" of the system were "not improvements to database functionality," but "flow[ed] from performing an abstract idea in conjunction with a well-known database structure").

In short, the '820 patent "is directed to the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two." *Intellectual Ventures I LLC,* 838 F.3d at 1322 (internal quotation marks and citation omitted). Therefore, an inventive concept is lacking, and the claims are invalid under § 101.

**3. Prior USPTO findings do not support patent eligibility.**

Arena IP's primary argument for an inventive concept is "the USPTO found that the system disclosed by the '820 patent was patentable and not disclosed by the prior art." Opp. at 17. That line of reasoning is invalid as a matter of law, as "a claim for a new abstract idea is still an abstract idea." *Synopsys*, 839 F.3d at 1151. Indeed, "[t]he 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter." *Diamond v. Diehr*, 450 U.S. 175, 188–89 (1981). Every issued patent that has been invalidated for lack of patentable subject matter (innumerable) once received a favorable assessment for novelty and non-obviousness from an examiner at the Patent Office. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) (explaining that "passing muster under 35 U.S.C. §§ 102 and 103" is not enough

to establish subject-matter eligibility). The Patent Office's assessment of novelty and obviousness is irrelevant.

**4. Limiting an abstract idea to a particular field, benefit, or technological environment does not make it patent eligible.**

The opposition points to the purported benefits of the patents for "older venues" or where "equipment will only be temporary and must be installed just before an event." Opp. at 1-2. However, no claim in the '820 patent is limited for use with older venues or temporary equipment. "Even a specification full of technical details about a physical invention may nonetheless conclude with claim that claim nothing more than the broad law or abstract idea underlying the claims." *ChargePoint,* 920 F.3d at 769.

Arena IP also emphasizes that the claims are limited to Wi-Fi networks in public venues, such as sports stadiums. *See, e.g.*, Opp. at 12 ("[T]he focus is a communications electronics [sic] that are provided within venues in the form of self-contained pods that enable enhanced video and communications with multiple wireless hand held devices for any public venues where data access is needed."). However, "[a] claim does not cease to be abstract for section 101 purposes simply because the claim confines the abstract idea to a particular technological environment in order to effectuate a real-world benefit." *In re Mohapatra*, 842 F. App'x 635, 638 (Fed. Cir. 2021); *see also Intellectual Ventures I LLC*, 838 F.3d at 1314 (finding claims ineligible that "merely applie[d] a well-known idea using generic computers to the particular technological environment of the Internet") (internal quotation marks and citation omitted). Likewise here, even if the claims were restricted to the context of providing Wi-Fi access in older public venues and stadiums (they are not),

that does not make the claims less abstract or more inventive. *Elec. Power Grp.*, 830 F.3d at 1354 ("Most obviously, limiting the claims to the particular technological environment of power-grid monitoring is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core."). Any restriction of the '820 patent to a particular field or environment does not affect the patentability analysis.

**C. There Is No Reason to Delay Dismissal With Prejudice**

After an opportunity to amend its complaint and more than six weeks to brief its opposition, Arena IP requests yet another extension of this case by an additional amendment. Such (unspecified) amendment is futile, and should be denied.

First, the specification itself establishes that the claim elements provide no technological improvement. *See supra* at n.3. And no additional facts or claim construction could change that, given the specification's admissions that the claims require only known and conventional technology. *See, e.g.*, *Elec. Commc'n Techs. v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1184 (Fed. Cir. 2020) (claims held ineligible on the pleadings as claim construction would not "affect the analysis"); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (claims ineligible on the pleadings even "construed in a manner most favorable to [patentee]").

Second, even if the specification did include inventive detail (which it does not), "the specification cannot be used to import . . . details if those details are not claimed." *ChargePoint,* 920 F.3d at 769. Here, the Amended Complaint included new allegations copied verbatim from the specification (Dkt. 19 ¶¶ 9-10), but found nowhere in the claims.

And providing Arena IP yet another opportunity to again copy into the complaint more parts of the specification (not included in the claims) would be a waste of time.

Third, Arena IP failed to identify any factual allegations in the Amended Complaint or the specification that preclude resolving the eligibility question at the pleadings stage. It cannot. There are no factual disputes, since the intrinsic record (patent specification and prosecution history) confirms that the claims lack eligible subject matter. *See Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) ("[A] court [on 12(b)(6)] need not accept as true [§ 101] allegations that contradict . . . the claims and the patent specification.") (internal quotes omitted). Indeed, should Arena IP manufacture such facts, the Court could properly reject them. *See, e.g., Yu, v. Apple Inc.*, 1 F.4th 1040, 1046 (Fed. Cir. 2021) ("[T]he district court considered the intrinsic record and concluded the claims were directed to patent-ineligible subject matter, despite . . . allegations to the contrary").

Dismissal with prejudice is warranted.

## III. CONCLUSION

The Patriots respectfully request that the Court dismiss the Amended Complaint with prejudice for lack of patent-eligible subject matter under § 101.

Dated: August 4, 2023

Respectfully submitted,

/s/ *Christopher J. Schwegmann*_
Christopher J. Schwegmann
Attorney in Charge
Texas Bar No. 24051315
SDTX ID No. 609501
cschwegmann@lynnllp.com
Kyle A. Gardner
Texas Bar No. 24116412
SDTX ID No. 3713279
kgardner@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
Telephone: 214-981-3800
Facsimile: 214-981-3839

*OF COUNSEL:*

Lisa K. Nguyen
Pro Hac Vice Pending
lisa.nguyen@allenovery.com
**ALLEN & OVERY LLP**
550 High Street
Palo Alto, CA 94301
Telephone: 650-388-1724
Facsimile: 650-388-1717

Colby Davis
Admitted Pro Hac Vice
colby.davis@allenovery.com
**ALLEN & OVERY LLP**
1101 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-683-3834
Facsimile: 202-683-3999

***Attorneys for Defendant***
***New England Patriots, LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will serve electronic notification of such filing to all counsel of record.

By: /s/ *Christopher J. Schwegmann*_
Christopher J. Schwegmann